47 CCPA
**Application of John C. HUNTINGTON.**
**Patent Appeal No. 6580.**

United States Court of Customs
and Patent Appeals.
June 14, 1960.

Garvey & Garvey, Bernard F. Garvey, Washington, D. C. (George A. Garvey, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Joseph F. Nakamura, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the affirmance by the Patent Office Board of Appeals of the rejection of application serial No. 40,946, filed April 6, 1956, for a design patent on a pillowcase.

The appealed application was copending with another application of the same applicant, serial No. 35,795, filed May 3, 1955, which resulted in Patent No. Des. 177,472 issued on April 17, 1956, on a pillow.

The references relied on are: Chour, Des. 159,471, August 1, 1950; Huntington, Des. 177,472, supra, April 17, 1956.

The significant fact in this case is that the pillowcase of the application is so designed as to its shape that it will fit the pillow of the Huntington patent. Perforce, the shape of the pillowcase is substantially identical with the cloth covering of the pillow, the stuffing of which makes a pillow of it. The pillow patent shows the pillow as having a center section of symmetrical trapezoidal shape and symmetrical wings extending at an obtuse angle from either side thereof, the wings having rounded outer ends. At the top of each wing and extending outwardly from its junction with the center section there appears to be a short slit covered by a small flap on which are two round fastners which look like solid buttons or snap fasteners. The shape of the pillow as shown by the drawing would indicate that its covering has been stuffed to capacity.

The pillowcase differs from the cloth covering of the pillow only in that the flaps and round fasteners are omitted and, instead, a single conventional slide fastener extends along the longer edge of one of the wings, presumably to provide an opening through which a pillow can be inserted. The slide fastener is quite inconspicuous and can scarcely be regarded as an "ornamental" aspect of the pillowcase design, which is primarily a matter of overall configuration or outline.

Quite clearly Huntington has but a single design concept which is embodied in the pillow which he patented. The issuance of the patent indicates that he had a patentable design. Eleven days before his pillow patent was to issue, he filed the application at bar for a patent on the same concept as embodied in a pillowcase for the now patented pillow.

We will dispose of the Chour reference merely by stating that it was cited only for its showing of a "zipper" closure along one edge, the examiner saying that no novelty could be predicated on the use of a "zipper" so placed. We agree. Appellant bases no argument on the existence or positioning of the "zipper" and we feel justified in dismissing it from consideration as *de minimis*.

■ The board affirmed the examiner's rejection, which was predicated on the existence of but one design invention

in the pillow of the Huntington patent and the pillowcase of the application at bar, and held that there could not be two patents on this single invention.

The examiner's statement of the grounds of his rejection also expressed the thought that "the invention was exhausted upon the grant of said patent." We take this to mean that Huntington's *right to patent protection* was exhausted when he obtained the pillow patent, and with this we agree.

Appellant's argument is that the pillowcase could be filled with pillows of various contours (and of course it could remain empty) so that it "could probably be manufactured, used and sold with no liability for infringement of Applicant's said patent, No. D–177,472. Allowance of the claim of this application is necessary to afford Applicant the protection to which he is entitled."

■ Of course, it is not for us to say whether some other court would hold the pillow patent infringed by the pillowcase, either directly or contributorily, as it might. But this is not a matter which can affect our decision. It is not an infrequent occurrence that inventors obtain patents which do not give them all the protection to which they are "entitled" or protection on those aspects of their inventions which they later decide they want to protect. Once a patent is granted on a single unitary invention, the inventor has exhausted his rights (except for the remedies provided in Chapter 25 of Title 35 U.S.C.) and cannot obtain another patent thereon. It is for him to see that his patent covers the right thing, from his point of view, not for us to rectify his errors.

Appellant also says, "The overall appearance of *Applicant's pillow case* is not even remotely suggested in *Applicant's reference patent * * *.*" This is but wishful thinking. The latter is virtually the skin of the former. As the Patent Office brief says, "Once the pillow had been conceived, the outline of the pillow case could not have been other than what it is."

The decision of the board is affirmed.

Affirmed.

